IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,638

In the Matter of JAMES W. FULLER,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 30, 2020. Indefinite suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*James W. Fuller*, respondent, argued the cause pro se.

PER CURIAM: This is an attorney discipline proceeding against James W. Fuller, of Independence, Missouri. Respondent was admitted to practice law in the state of Kansas on April 7, 2017.

On January 2, 2020, the Disciplinary Administrator's office filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). That same day, the Disciplinary Administrator's office filed a notice of hearing, confirming that a hearing on the formal complaint was scheduled for February 20, 2020. On February 20, 2020, three hours before the hearing, the respondent filed an answer to the formal complaint. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on February 20, 2020, where the respondent appeared pro se. The hearing panel determined respondent violated Kansas Supreme Court Rule 208 (2020 Kan. S. Ct. R. 247) (registration), KRPC 1.1 (2020 Kan. S. Ct. R. 291) (competence), KRPC 1.3 (2020 Kan. S. Ct. R. 295) (diligence), KRPC 1.4

1

(2020 Kan. S. Ct. R. 296) (communication), KRPC 1.7 (2020 Kan. S. Ct. R. 306) (conflict of interest), KRPC 1.16 (2020 Kan. S. Ct. R. 340) (terminating representation), KRPC 5.5 (2020 Kan. S. Ct. R. 374) (unauthorized practice of law), and KRPC 8.4 (2020 Kan. S. Ct. R. 394) (professional misconduct).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"7.     The hearing panel finds the following facts, by clear and convincing evidence:

"8.     James W. Fuller (hereinafter 'the respondent') is an attorney at law, Kansas attorney registration number 27305. His last registration address with the clerk of the appellate courts of Kansas is 3101 N. Osage Street, Independence, Missouri 64050.

"9.     The respondent graduated from the University of Kansas, School of Law in May, 2016. The respondent took the Kansas bar in July, 2016. The respondent failed the bar examination. The respondent took the bar again in February, 2017, and passed the examination. On April 7, 2017, the Kansas Supreme Court admitted the respondent to the practice of law.

"10.     At the time of his admission to the practice of law, the respondent had been working as a law clerk for the Law Offices of Heath A. Stuart in Olathe, Kansas. Following his admission, Mr. Stuart extended an offer of employment to the respondent as an associate attorney. The respondent accepted the position and remained in that position until the events which lead to the instant disciplinary case.

2

"11.     During law school, utilizing the student health services, the respondent obtained a prescription for Adderall.  Following graduation, the respondent no longer had access to health services and began purchasing Adderall illegally.  Initially, he purchased Adderall from E.R., the respondent's friend.  During the summer of 2017, the respondent met C.M.  After the respondent learned that E.R. was purchasing the Adderall from C.M., the respondent began purchasing the Adderall illegally directly from C.M.

"12.     In February, 2018, C.M. was charged with harassment by a telephonic device, a class A misdemeanor, in the Leawood Municipal Court.  C.M. asked the respondent to represent him.  The respondent requested a $1,500 retainer.  C.M. failed to pay the retainer or sign an employment agreement.

"13.     The night before C.M.'s first appearance, C.M. contacted the respondent to discuss the case.  C.M. implied that the respondent had to represent C.M. or C.M. would use the respondent's illegal use of Adderall purchases against the respondent.  The respondent was not sure how C.M. would use the information, but he believed that C.M. would use the information to harm the respondent. The respondent did not know whether C.M. planned

> 'to use the information as leverage in securing a better deal with the city prosecutor, inform the police, or simply to contact the KS Bar as a way to  "punish" [the respondent] for not helping him out.'

As a result, the respondent agreed to represent C.M.  On March 28, 2018, the respondent entered his appearance on behalf of C.M.

"14.     In February, 2018, the respondent began using methamphetamine as a substitute for Adderall.  According to the respondent, methamphetamine 'was more readily available, much cheaper and allowed [him] to work long hours from home while saving [the] adderall [*sic*] for the day and work week.' During this time period, the respondent was also using marijuana.

3

"15.     The respondent accepted Adderall and methamphetamine from C.M. in lieu of the payment of attorney fees.

"16.     On May 22, 2018, the respondent failed to appear in court on behalf of A.W.  The court issued a warrant for A.W.'s arrest.  On June 18, 2018, A.W. was taken into custody.  That same day, A.W. called Mr. Stuart and informed him that the respondent failed to appear on her behalf, leading to her arrest. The respondent did not inform A.W. that he would not be attending the hearing.  During that hearing, the court issued a warrant for A.W.'s arrest.

"17.     On June 19, 2018, the respondent sent Mr. Stuart a text message.  In the text message, the respondent told Mr. Stuart that he was preparing a letter of resignation and that he would need to self-report misconduct to the disciplinary administrator's office.  The respondent also stated, 'it's just all become too much and I can no longer effectively represent clients in my opinion.'

"18.     In reaction to the respondent's text message and because A.W. contacted Mr. Stuart after she was arrested on the warrant, Mr. Stuart conducted an investigation of the respondent's files and the computer.  When Mr. Stuart reviewed the respondent's file he maintained for the representation of A.W., he saw that the respondent recorded A.W.'s May 22, 2018, court date in the file.  The respondent failed to put the appearance on the firm's master calendar.  During Mr. Stuart's investigation of the respondent's files, he discovered that the respondent failed to appear on behalf of two other clients, including C.M.

"19.     When Mr. Stuart reviewed the respondent's computer, he discovered programs and applications that he was not familiar with.  One of the programs that Mr. Stuart was not familiar with was called My SMS.  My SMS is a text message application for computers.  The respondent used his office computer to communicate with his clients

4

by text message. My SMS recorded the respondent's text messages made on both his mobile phone as well as his office computer. When Mr. Stuart reviewed the text messages, Mr. Stuart discovered that the respondent was trading legal representation for illegal drugs with C.M. By way of example, the following are excerpts from the text conversation between the respondent and C.M.:

'[By the respondent] Need I remind you that I'm your friend first and foremost. Your lawyer seconds [*sic*] and your customer third lol [April 26, 2018 1:43 p.m.]'

'I got the cash if you have a little of that other stuff weaning down [April 26, 2018 1:44 p.m.]'

'[By C.M.] I have a bit [April 26, 2018 1:46 p.m.]'

'[By the respondent] Well I can swing by soonish if it works for you and if you need some groceries or some extra cash or something for a little bit just let me know man I'm here for ya [April 26, 2018 1:53 p.m.]'

'just at the KCK Courthouse for the next 35 minutes or so [April 26, 2018 1:53 p.m.]'

'[By C.M.] Cool . [*sic*] Swing by after [April 26, 2018 1:53 p.m.]'

. . . .

'[By the respondent] Oh and if [E.R.] makes his way over there could you throw him some extra of that other stuff for me? That will likely settle us up for all but the trial or plea hearing itself in Leawood. [May 16, 2018 4:05 a.m.]'

'[By the respondent] just depends on what all's there ads [*sic*] work too obviously. Oh and btw your buddy is running out of time to get that clean. 4 weeks in already so means only two weeks left of the half supply. [May 16, 2018 4:07 a.m.]'

'just throwing it out there man not to bug you brosef [May 16, 2018, 4:07 a.m.]'

'[By C.M.] Yes. I'll send it with [E.R.] He just showed up and woke me up. [May 16, 2018, 4:08 a.m.]'

'What would you like . [*sic*] [May 16, 2018, 4:08 a.m.]'

5

'[By the respondent] Ads and like a gram or like we did last time if you can. That would settle us up pretty well [May 16, 2018, 4:09 a.m.]'

. . . .

'[By the respondent] Wanted to get with you re: the other thing and brakes guy [May 18, 2018, 5:22 p.m.]'

'[By the respondent] Hey I am going to want that g. Offer still on the table? [May 18, 2018, 8:30 p.m.]'

'[By C.M.] Yes [May 18, 2018, 8:30 p.m.]'

'[By the respondent] I'll throw you something for it but gonna have to be tomorrow. On my own principles [May 18, 2018, 8:30 p.m.]'

. . . .

'[By the respondent] Can I do a stop and go please? Super bad day and have cash [May 22, 2018, 9:16 a.m.]'

'[By C.M.] Certainly [May 22, 2018, 9:18 a.m.]'

'[By the respondent] Ok I'm leaving here right now. Thank you. [May 22, 2018, 9:20 a.m.]'

'[By C.M.] Yup [May 22, 2018, 9:23 a.m.]'

'[By the respondent] Hey man I wanted to see if I could buy a bit more for the long weekend. [May 24, 2018, 1:29 p.m.]'

'Home girl joined in the fun. Good problem to have [May 24, 2018, 1:30 p.m.]'

'[By C.M.] Yup [May 24, 2018, 1:45 p.m.]'

'[By the respondent] Cool beans. I am going to a hearing in KCK and will give you a buzz when I'm out of there and headed your way like me [*sic*] around 3:15. And I am off the rest of the day so if you wanted to kick it and play some FIFA let me know I'll pick up some beer or something [May 24, 2018, 2:03 p.m.]'

. . . .

'[By the respondent] Why don't we say that extra 0.7 you needed to grab from my Friday purchase? [June 2, 2018, 11:40 p.m.]'

'No need to drop it off now and this officially wipes your trial debt for Lenexa [June 2, 2018, 11:41 p.m.]'

6

'Fair? . . . [June 2, 2018, 11:42 p.m.]'

"20.     On June 26, 2018, the respondent sent the disciplinary administrator a short letter, self-reporting misconduct. In the letter, the respondent stated: 'Please accept this letter as my self-report of a violation of the Model Rules. I traded legal services for an illegal and unlawful substance with one of my clients.' That same day, Mr. Stuart also filed a complaint against the respondent. Mr. Stuart provided detailed and background information to the circumstances which gave rise to the respondent's self-report.

"21.     On July 24, 2018, the respondent provided supplemental information. In the letter, the respondent asserted that he stopped using Adderall and methamphetamine 'cold turkey' on June 15, 2018, and experienced serious withdrawal symptoms during the weekend that followed. The respondent also stated 'I have not used methamphetamine or adderall [*sic*] at all since June 15, 2018.' However, during the hearing on the formal complaint, the respondent stated that he had relapsed after one week of treatment. Despite the respondent's statements in his July 24, 2018, letter and his testimony during the hearing on the formal complaint, the timing of the respondent's treatment and relapse are unclear. The respondent's self-report letter was dated June 26, 2018. However, the respondent testified that he believed he self-reported 'shortly before June 15th.' During his testimony, the respondent tied the timing of his self-report to his treatment:

> 'Q.     [By Mr. Hazlett] Because I think I recall seeing at some point that you indicated that you had been drug free since June 15th of 2018?
>
> 'A.     [By the respondent] I believe it would have been right around that time. I believe I had self-reported, 'um, shortly before June 15th, which would have put me one week later. June 15 would have been when my treatment started. I—I believe—I believe that's the case.'

7

The respondent testified that the treatment program was 11 weeks long and that he started either the first or the third week of June, 2018. In the self-report, the respondent did not aver that he was in treatment at that time. Further, the respondent did not present any other evidence as to participation in or completion of drug treatment.

"22.    Also in the July 24, 2018, letter, the respondent stated that he retained John Ambrosio to represent him in the disciplinary proceeding.  Mr. Ambrosio withdrew from the representation on September 25, 2019.

"23.    During 2019, the Supreme Court established an online attorney registration system.  Several email messages were sent to all attorneys notifying the attorneys of the new system.  At the hearing on the formal complaint, the respondent confirmed that the clerk's office had the respondent's current email address and that he received the email messages sent by the clerk's office.  Despite the many notifications, the respondent failed to pay the annual registration fee, due June 30, 2019.  After the deadline to pay the annual registration fee passed, additional email messages were sent to the respondent regarding his obligation to pay the registration fee and the late fee.  The respondent failed to do so.  Further, the respondent failed to complete the continuing legal education as well as pay the CLE fee.

"24.    On October 8, 2019, the Supreme Court issued an order suspending the respondent's license to practice law for failing to comply with the annual requirements to maintain a law license. Because the respondent failed to update attorney registration with his current address, the order of suspension was sent to an old address and the order was returned to sender. The respondent's license to practice law remains suspended.

"25.    Following October 8, 2019, and despite the Supreme Court's order of suspension, the respondent engaged in the unauthorized practice of law.

8

a.    On October 16, 2019, the respondent appeared with E.R. in Johnson County District Court case number 19CR1588, for a 'no go prelim hearing.'

b.    On December 10, 2019, the respondent appeared with E.R. for a bond review hearing.  That same day, E.R. tested positive for 'meth and benzos.'

c.    On December 12, 2019, the respondent appeared with E.R. for a plea hearing. E.R. entered a plea of guilty to violating K.S.A. 21-5709(e)(3), possession of drug paraphernalia.

d.    On December 6 and 10, 2019, the respondent communicated with the attorney prosecuting the case against E.R. by email and calling himself, 'Attorney for [E.R.]'.

"26.    Despite his knowledge that in order to maintain a law license, an attorney must comply with the annual registration requirements, including the completion of 12 hours of CLE and despite his knowledge that he failed to comply with the annual registration requirements, the respondent alleged that he did not know that his license was suspended until he received a copy of the formal complaint in the instant case. The respondent's assertions in this regard are, at best, disingenuous.

"27.    The respondent filed an answer to the formal complaint the morning of the hearing on the formal complaint, February 20, 2020.

*"Conclusions of Law*

"28.    The respondent stipulated that he violated all of the rules alleged in the formal complaint.  Based on the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated Kan. Sup. Ct. R. 208 (registration), KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.7 (conflict of interest), KRPC 1.16 (terminating

9

representation), KRPC 5.5 (unauthorized practice of law), and KRPC 8.4 (professional misconduct), as detailed below.

"Kan. Sup. Ct. R. 208

"29.    Kan. Sup. Ct. R. 208(n) provides:

'Change of Address and Contact Information. A registered attorney must notify the Office of Judicial Administration no later than 30 days after a change of legal name, residential address, business address, email address, business telephone number, residence/personal telephone number, liability insurer, or trust account information.'

The respondent moved from his address in Grandview, Missouri, and failed to inform attorney registration of his new address.  As a result of the respondent's failure to inform attorney registration of his new address, correspondence including a copy of the order of suspension, was mailed to an address which was no longer valid. The respondent stipulated that he violated Kan. Sup. Ct. R. 208.  As such, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 208.

"KRPC 1.1

"30.    Lawyers must provide competent representation to their clients.  KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to exercise the requisite thoroughness and preparation for his representation of A.W., C.M., and one other client, when he failed to appear in court on their behalf at scheduled hearings.  Further, the respondent failed to exercise the legal knowledge, skill, thoroughness, and preparation when he represented E.R. at a time when the respondent's license to practice law was suspended. Further, the respondent stipulated that he violated KRPC 1.1.  Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

10

"31. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent A.W., C.M., and one other client when he failed to appear in court on their behalf for scheduled hearings. The respondent's lack of diligence caused a delay in each of those cases. The respondent stated that he violated KRPC 1.3. Moreover, based on the respondent's stipulation and because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3 on multiple occasions.

## "KRPC 1.4

"32. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to keep A.W. reasonably informed about the status of her case. The respondent stipulated that he violated KRPC 1.4. Thus, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.7

"33. KRPC 1.7 provides:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

'(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

11

(1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)     the representation is not prohibited by law;

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives informed consent, confirmed in writing.'

The respondent created a serious conflict of interest in representing C.M. when he accepted illegal drugs in exchange for legal representation and thereby engaged in felonious conduct with his client. The representation of C.M. was materially limited by a personal interest of the respondent. Obviously, C.M. did not give informed consent, confirmed in writing. Additionally, the respondent created a conflict of interest by purchasing illegal drugs from E.R. and then representing E.R. The representation of E.R. was materially limited by a personal interest of the respondent. Just like with C.M., each time the respondent purchased illegal drugs from E.R., the respondent and E.R. engaged in felonious conduct. The respondent stipulated that he violated KRPC 1.7. The hearing panel concludes that the respondent repeatedly violated KRPC 1.7(a)(2).

"KRPC 1.16

"34.     Unless otherwise ordered by a court:

'a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1)     the representation will result in violation of the rules of professional conduct or other law.' KRPC 1.16(a)(1).

Because the representation of both C.M. and E.R. resulted in the violation of KRPC 1.7, the respondent was prohibited from representing them. The respondent stipulated that he

12

violated KRPC 1.16. As such, the hearing panel concludes that the respondent violated KRPC 1.16(a)(1).

## "KRPC 5.5

"35.     KRPC 5.5 prohibits the unauthorized practice of law. After the Kansas Supreme Court suspended the respondent's license to practice law, the respondent represented E.R. in the Johnson County District Court. Specifically, the respondent made three court appearances, held himself out as an attorney in correspondence, and resolved the criminal case by plea. The respondent stipulated that he violated KRPC 5.5. Accordingly, the hearing panel concludes that the respondent violated KRPC 5.5.

## "KRPC 8.4(b)

"36.     'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent engaged in criminal conduct when he purchased illegal drugs and when he traded legal representation for illegal drugs. Purchasing illegal drugs reflects adversely on the lawyer's fitness as a lawyer in other respects. The respondent stipulated that he violated KRPC 8.4(b). Thus, the hearing panel concludes that the respondent violated KRPC 8.4(b).

## "KRPC 8.4(d)

"37.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to appear in court on behalf of three clients. The respondent stipulated that he violated KRPC 8.4(d). The hearing panel concludes that he violated KRPC 8.4(d).

13

*"American Bar Association
Standards for Imposing Lawyer Sanctions*

"38.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards').  Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"39.    *Duty Violated*.  The respondent violated his duty to the public and the legal profession to maintain his personal integrity.  Additionally, the respondent violated his duty to his clients to provide competent and diligent representation and adequate communication.

"40.    *Mental State*.  The respondent knowingly and intentionally violated his duties.

"41.    *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to his clients, to the administration of justice, and to the legal profession.

"Aggravating and Mitigating Factors

"42.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.  In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    *Dishonest or Selfish Motive*.  While the respondent's misconduct did not involve dishonesty, it was selfish.  The respondent's misconduct was motivated by his desire to obtain illegal drugs.  The respondent acted selfishly when he purchased drugs from his clients, putting them at risk for their felonious conduct.

14

The hearing panel concludes that the respondent's misconduct was motivated by selfishness.

b.      *A Pattern of Misconduct*.  The respondent did not engage in an isolated instance of misconduct.  Rather, the respondent engaged in a pattern of misconduct by repeatedly trading legal representation for illegal drugs, purchasing drugs from his clients, and failing to appear in court on behalf of three clients.

c.      *Multiple Offenses*.  The respondent committed multiple rule violations. The respondent violated Kan. Sup. Ct. R. 208 (attorney registration), KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.7 (conflict of interest), KRPC 1.16 (termination of representation), KRPC 5.5 (unauthorized practice of law), and KRPC 8.4 (professional misconduct).

d.      *Illegal Conduct, Including that Involving the Use of Controlled Substances*.  The respondent committed multiple felony crimes when he traded legal representation for illegal drugs and when he purchased illegal drugs from his clients. When the respondent engaged in criminal conduct, his clients also engaged in criminal conduct. The respondent's criminal conduct is a significant aggravating factor.

e.      *Additional Consideration*.  The respondent did not present any type of plan or details as to how he planned to rehabilitate himself to practice law within the confines of the Kansas Rules of Professional Conduct, the Rules Relating to the Discipline of Attorneys, and the attorney's oath of office.

"43.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.  In reaching its

15

recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a. *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

b. *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"44. The hearing panel acknowledges that the respondent is inexperienced in the practice of law, having been admitted in 2017. Because the misconduct in this case does not involve the practice of law, the hearing panel concludes that the respondent's inexperience does not mitigate the misconduct.

"45. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

4.32 'Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.'

4.42 'Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

5.12 'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

*"Recommendations of the Parties*

"46. The Disciplinary Administrator recommended that the respondent be indefinitely suspended from the practice of law. The respondent acknowledged that the

16

misconduct warranted a period of suspension. The respondent recommended that his license be suspended for a period of six months.

*"Recommendation of the Hearing Panel*

"47. Based on the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be indefinitely suspended.

"48. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Supreme Court Rule 211(f) (2020 Kan. S. Ct. R. 254). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2020 Kan. S. Ct. R. 258). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

17

The only remaining issue before us is the appropriate discipline for the respondent's violations. At the hearing before this court, the office of the Disciplinary Administrator recommended that the respondent be indefinitely suspended from the practice of law. The hearing panel unanimously recommended that the respondent's license to practice law be indefinitely suspended. The respondent requested that his license be suspended for a period of six months.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. Supreme Court Rule 212(f). We are certainly aware and sympathetic of the devastating consequences of drug dependence and the toll it can take in the lives of people like the respondent. However, we cannot overlook the serious nature of the misconduct underlying the findings in this case, which includes the respondent creating a serious conflict of interest by accepting illegal drugs in exchange for legal representation and thereby engaging in felonious conduct with his client. We therefore adopt the recommendation of both the hearing panel and the Disciplinary Administrator of indefinite suspension.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that James W. Fuller be and he is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2020 Kan. S. Ct. R. 234), effective upon the date of the filing of this opinion.

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 (2020 Kan. S. Ct. R. 265).

IT IS FURTHER ORDERED that when respondent applies for reinstatement, he shall comply with Supreme Court Rule 219 (2020 Kan. S. Ct. R. 266), including undergoing a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

BEIER, J., not participating.
MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 122,638 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Carol A. Beier.